Taut, J.
Both parties recognize that the outcome of this case depends entirely upon the meaning to be given to the words “demised premises” where they appear as the last two words of the first sentence of the paragraph numbered “eleventh” in the agreement of June 24,1952, between Loblaw and defendant. If those words are construed as referring only to the Loblaw store, then defendant must prevail. On- the other hand, if they are construed as referring not only to the Loblaw store but also to the portions of the over-33-acre parcel of land which were to be improved by defendant for use by Loblaw and others as “parking lot, service areas, driveways, etc.,” then Loblaw might prevail. No other possible meaning for those words has been suggested.
The foregoing agreement is superimposed upon a printed form of Loblaw and was prepared by Loblaw. Part of the agreement is represented by the printed words of that form and part is represented by additions thereto by typewriter. The paragraph numbered “eleventh” of the agreement reads, typewritten portions being indicated by italics:
“The lessor agrees during the term hereof not to lease or permit to be used any portion of any store or building now or hereafter owned, acquired or controlled by it for any business or purpose which shall be in direct competition with the business then being conducted in the demised premises, provided any such store or building is located within a radius of 500 feet of the demised premises.
“The restrictions contained in this paragraph shall *588 not apply to a competitive business which occupies a store having (a) a frontage of 30 feet or less and (b) a total floor area of 3,000 square feet or less. The lessee hereby specifically consents that the lessor may lease to Kroger or may othemoise lease as a supermarket the store 100 feet in width by 140 feet in depth which is designated on exhibit ‘G’ as ‘The Kroger Co.’. It is specifically understood and agreed that such store shall not be increased in width or depth at any time unless the lessor shall, upon the request of the lessee, increase the demised premises in like manner, with the rent for such space added to the demised premises to be paid at the same rate per square foot of floor area as that being received by the lessor from Kroger or such other supermarket for the area added to its store.”
The words “demised premises” are used twice in the printed' and twice in the typewritten portion of that paragraph. The first use in the printed portion is with reference to “business * * * conducted in the demised premises.” If something other than the store was being referred to, the word “on” should have been used instead of “in.”
The second use in the printed portion is the use where the meaning to be given to the words will determine the outcome of this case.
When the typewritten portions of paragraph “eleventh” of the agreement are considered, it is obvious that the words “demised premises,” as used twice therein, necessarily mean only the Loblaw store. Thus, if the Kroger “store shall not be increased in width or depth * # * unless the lessor shall * * * increase the demised premises in like manner,” it is obvious that “demised premises” mean only the Lob-law store. The remainder of the sentence makes that obvious conclusion absolutely certain.
*589 We have set forth the “whereas” or preamble clauses and paragraph “second” (the granting clause), as well as paragraph “first” to which paragraph “second” apparently refers, quite fully in the statement of facts because of the principal contentions of Loblaw. These were that “the basic rights and duties of the parties are set forth in the granting clause of the agreement, in the light of their basic intent as indicated in the preamble,” and paragraph “eleven, the restrictive clause at issue herein, can only be interpreted with respect to, and in light of, the basic intent and effect of this relationship as set forth in” the granting clause and the preamble.
The first sentence of paragraph “second” (in referring to the lessor letting and the lessee taking “those certain premises hereinbefore described, including the store * * # together with the remainder of the parcel of land to be owned by the lessor, as the same shall be improved by the lessor, as hereinbefore described”), as well as three of the last four sentences of paragraph “first” (indicating that “possession” of “the building and the improvement of the portion of the premises to be used for purposes of a parking lot” was to “be given to the lessee,” that “possession” of “such building and parking lot” was to be “delivered to the lessee,” and that these things to be given to the lessee were “the demised premises”), contains the only words in paragraph “first” or “second” or in the preamble of the agreement that can conceivably in any way support Loblaw’s contentions. All those words are part of the printed form.
The last two sentences of paragraph “second” are typewritten and are the only portions of that paragraph which are not part of the printed form. A reading of those two sentences tends to indicate that the words “demised premises” mean the Loblaw *590 store, not the store plus some other premises. Thus, in the first of those typewritten sentences, “the entire project * * * and the parking lot, approaches, service areas, etc.,” as well as “the entire building and the parking lot, approaches, driveways, service areas, etc.,” are both used as obviously not the equivalent of “the demised premises.” Also, in the second of those typewritten sentences, “demised premises” are quite clearly used as the equivalent of the Loblaw store.
This conclusion is also fortified by the last of the “.whereas” clauses (likewise typed) which indicates a desire “to lease * * * one of the stores * * * together with [merely] the use of [not] the parking Lot, service areas, driveways, etc.”
As stated in paragraph two of the syllabus in O’Neill v. German, 154 Ohio St., 565, 97 N. E. (2d), 8:
“The typed portion of a * * * contract will prevail over the printed portion thereof, if the two are inconsistent.”
A reasonable construction of these provisions relied upon by Loblaw leads at most to the conclusion that the “demised premises” were the store and that the right to use other portions of the defendant’s land as a parking lot or for service areas or driveways was merely an appurtenance to those premises, — not a part of those premises. See decisions holding that, within meaning of a constitutional provision exempting from taxation sales of food for consumption “off the premises where sold,” the word “premises” means only the portion of an area that is in the actual possession or control of the vendor and not other portions that the vendor is merely permitted to use in making sales. Cleveland Concession Co. v. Peck, Tax Commr., 159 Ohio St., 480, 112 N. E. (2d), 529; Castleberry v. Evatt, Tax Commr., 147 Ohio St., 30, 67 N. E. (2d), 861, 167 A. L. R., 198.
*591 There are numerous other portions of the agreement which require the conclusion that the words “demised premises,” as used therein, mean only the Lob-law store. For example, in the printed portion of paragraph “third” it is “agreed that the lessee shall use the demised premises, or any part thereof, for the purpose of * # * selling beer, ale and wines and household, food, personal and incidental supplies.” Certainly no reasonable persons in the position of Loblaw and defendant would have contemplated such sales outside or at least very far outside the walls of a store. Also, the typewritten portions of paragraph “third” spell out the rights and obligations with respect to the portion of defendant’s land not to be occupied by buildings and specifically provide “that the lessee’s use of the parking areas, approaches, driveways, service areas, etc., shall be in common with the tenants of ■the other stores in the shopping plaza.” Further, in paragraph “fourth,” the lessee agrees “to keep the sidewalks in front of the demised premises reasonably clear of snow, ice and "dirt” and “that it will not display merchandise on the sidewalk in front of the demised premises. ”
We do not believe it would serve any useful purpose to point out the numerous other instances of provisions of the agreement which require the conclusion or at least strongly indicate that the parties thereto meant only the Loblaw store when they used therein the words ‘ ‘ demised premises. ’ ’
The very most that can be said with respect to Lob-law’s contentions is that there may be some doubt as to whether the last two words of the first sentence of paragraph “eleventh” should be construed to refer only to the store.' If they are not so construed, then the restriction on defendant’s free use of his land will be substantially increased.
The general rule, with respect .to construing agree *592 ments restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate. 14 American Jurisprudence, 621, Section 212. Thus, in Frederick v. Hay, 104 Ohio St., 292, 135 N. E., 535, the syllabus reads:
“Where the words of a restriction contained in a deed of conveyance are equally capable of two or more different constructions, that construction will be adopted which least restricts the free use of the land. (Hunt v. Held, 90 Ohio St., 280, approved and followed.) ”
Also in Hunt v. Held, 90 Ohio St., 280, 107 N. E., 765, L. R. A. 1915D, 543, paragraph one of the syllabus reads:
“Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful all doubt should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee.”
See Arnoff v. Williams, 94 Ohio St., 145, 113 N. E., 661.
The application of this general rule in the instant case requires the conclusion that the words “demised premises,” where they appear as the last two words of the first sentence of the paragraph numbered “eleventh” in the agreement between Loblaw and defendant, mean only the Loblaw store.
It follows that the judgment of the Court of Appeals must be reversed and final judgment rendered for defendant.

Judgment reversed.

Matthias, Hast, Stewabt and Bell, JJ., concur.
Weygandt, C. J., dissents.