WESTERHEIDE, Appellant,

v.

STATE FARM INSURANCE COMPANIES et al.; American
Hardware Insurance Group, Appellee.

[Cite as *Westerheide v. State Farm Ins. Cos.* (1993), 86 Ohio App.3d 557.]

Court of Appeals of Ohio,
Shelby County.

No. 17–92–20.

Decided Feb. 25, 1993.

558

*Faulkner, Garmhausen, Keister & Shenk, James L. Thieman* and *Michael P. Morley,* for appellant.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A.,* and *James J. Brudny, Jr.,* for appellee.

HADLEY, Judge.

This is an appeal by plaintiff-appellant, Norbert C. Westerheide, from the judgment of the Court of Common Pleas of Shelby County in favor of defendant-appellee, American Hardware Insurance Group.

Appellant and appellee stipulated to the following facts. Wentz Chevrolet, Inc. ("Wentz") and William, Russell, Lloyd and Harold Wentz, d.b.a. Wentz Brothers, purchased property and garage liability insurance from appellee on November 29, 1975. Appellee's insurance agent, Don Langdon ("Langdon"), prepared the application for insurance for both the corporation and the partnership on the same form ("Auto and Equipment Dealers Policy"). Russell Wentz ("Russell") signed the form as applicant, without indicating whether he was signing for the partnership or the corporation.

On the application form, Langdon did not check the box indicating that uninsured and underinsured motorist coverage was purchased. Langdon did write on the face of the application "Not desired; do not include UMC" with an arrow drawn to the place on the form to check uninsured and underinsured motorist coverage. Under Langdon's notation, William Wentz ("William") signed his name. William also failed to indicate whether he was signing for the corporation or the partnership.

On February 23, 1989, appellant, an employee of Wentz, was driving a tow truck owned by Wentz on State Route 274 in Shelby County, Ohio. A vehicle driven by Michael Mullins ("Mullins") collided with appellant's vehicle. Mullins was fatally injured. Appellant and his passenger, Tonya Westerheide ("Tonya"), were injured. At the time of the accident, appellant was operating the tow truck in the scope of his employment.

On February 20, 1991, appellant and Tonya filed a complaint for money damages and declaratory judgment against State Farm Insurance Companies, the estate of Michael Mullins, Nationwide Insurance ("Nationwide") and appellee. On February 25, 1991, they amended their complaint to add State Farm Mutual Insurance Company.[1]

Nationwide and appellee both denied appellant's claim for benefits under underinsured motorist coverage.[2] Nationwide eventually settled with appellant. Appellee, Wentz's insurance carrier, denied appellant's claim, stating that Wentz had expressly rejected uninsured and underinsured coverage on its policy.

A trial to the court was held on April 8, 1992. At the time of the trial, the Wentz brothers were unavailable to testify.[3] The only witness available was appellee's insurance agent, Langdon, who sold the insurance policy to Wentz and Wentz Brothers. Upon direct examination, Langdon testified that William, Russell, Lloyd and Harold stated that they did not want uninsured or underinsured motorist coverage. Appellant objected to Langdon testifying to what William and his brothers said as being hearsay. After the hearing, appellant and appellee then stipulated that William was president and that Russell was secretary of Wentz at the time the insurance was purchased.

The trial court, after post-hearing briefs were filed, held that Langdon's testimony was not hearsay and that Wentz had expressly rejected uninsured and

---

1. State Farm and the estate of Michael Mullins settled with appellant and Tonya for $50,000 and were dismissed.

2. Tonya did not have a claim against Nationwide or appellee.

3. Three of the Wentz brothers were deceased at the time of the hearing and the other brother was not competent to testify because of medical problems.

underinsured motorist coverage. The court further held that William Wentz was acting in both his capacity as president of Wentz, as well as a partner of Wentz Brothers, when he signed the application for insurance. Therefore, Wentz expressly rejected uninsured and underinsured motorist coverage when William signed the application form under Langdon's notation stating that uninsured and underinsured motorist coverage was not desired. It is from this judgment that appellant now appeals and asserts two assignments of error.

## Assignment of Error No. I

"The trial court erred in admitting into evidence purported oral statements by William Wentz to the effect that Wentz Chevrolet, Inc. intended to reject uninsured and underinsured motorist coverage. These statements were hearsay as defined by Evidence Rule 801 and did not fall within any exception to inadmissibility contained in Evidence Rules 803 and 804."

■ Before addressing appellant's first assignment of error, we must first determine if appellant has standing to challenge whether William expressly rejected uninsured and underinsured motorist coverage for Wentz. Herein, appellant is an employee of Wentz. The insurance policy specifically covers Wentz's employees. As appellant's continued employment is consideration for his coverage under the insurance policy, he is an intended third-party beneficiary. Therefore, appellant has standing to challenge whether William expressly rejected uninsured and underinsured motorist coverage.

■ Appellant in his first assignment of error argues that the oral statements of William (as testified to by Langdon) that Wentz did not want uninsured and underinsured motorist coverage was offered to prove the truth of the matter asserted. Therefore, since William was not available to testify, the statement is hearsay.

Appellee argues that the oral statements by William are not hearsay but rather evidence of verbal conduct (words of a contract). Appellee also argues that the oral statements were not offered to prove the truth of the matter asserted, but to prove that there was an express rejection of uninsured and underinsured motorist coverage.

Evid.R. 801(C) states:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Herein, the sole issue is whether William expressly rejected uninsured and underinsured motorist coverage. Langdon's testimony regarding the alleged oral statements of William is offered to prove the truth of the matter asserted, *i.e.,*

whether Wentz expressly rejected uninsured and underinsured motorist coverage at the time it purchased the insurance policy. Thus, the alleged oral statements of William are not verbal conduct and the trial court erred in admitting them into evidence. Therefore, appellant's first assignment of error is well taken.

## Assignment of Error No. II

"The trial court erred in rendering judgment in favor of American Hardware Insurance Group because the admissible evidence was insufficient, as a matter of law, to prove that uninsured and underinsured motorist coverage had been expressly rejected."

Appellant argues that since William did not sign the application rejecting uninsured and underinsured motorist coverage as an agent for the corporation, the rejection was not effective as to the corporation. Therefore, absent an express rejection, uninsured and underinsured motorist coverage is provided by operation of law.

 Unless the insured expressly rejects uninsured motorist coverage, it is provided for the insured by operation of law. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 163, 51 O.O.2d 229, 230–231, 258 N.E.2d 429, 431. The insurance company has the burden of showing that the insured expressly rejected uninsured motorist coverage. *Poots v. Motorist Ins. Co.* (1986), 38 Ohio App.3d 48, 50, 526 N.E.2d 71, 73. Where terms of the contract are ambiguous, the contract must be construed against the party who supplied the words for the contract. See *Med. Consultants Imaging Co. v. Hardin Mem. Hosp. Co.* (Oct. 16, 1990), Hardin App. No. 6–89–11, unreported, 1990 WL 157251; *O'Niell v. German* (1951), 154 Ohio St. 565, 44 O.O. 11, 97 N.E.2d 8.

 Herein, Langdon filled out the insurance application for the partnership and the corporation. The insurance application, according to Langdon's testimony, provided separate coverage for the corporation and the partnership. The partnership purchased only property insurance for the building. The corporation purchased garage liability insurance for the car dealership. Langdon also wrote on the application, above William's signature, "Not desired; do not include UMC." However, Langdon failed to designate in what capacity Russell and William signed the application form.

 The record is devoid of any corporate records indicating that William, as president, had the authority to bind the corporation to the insurance contract.[4] Even though a president of a corporation usually has the authority to bind a

---

4. Appellant and appellee stipulated that Russell was secretary of Wentz at the time the insurance was purchased. Russell signed the application for insurance. However, the record

corporation, such authority cannot be inferred absent some corporate records indicating such authority. Hence, the insurance application, on its face, is ambiguous as to whether the partnership or the corporation rejected uninsured and underinsured motorist coverage.

Herein, Langdon, as a representative of the insurer and drafter of the form, was in the best position to avoid any ambiguity raised on whether William's signature bound the corporation. Since two distinct and separate entities were purchasing separate types of insurance, Langdon could have taken additional steps to clarify the coverage, such as writing two separate insurance policies or by placing the designated rejection on a separate paper and incorporating the rejection into the application. By doing so, there would not be a question as to whether either entity rejected uninsured and underinsured motorist coverage. Also, Langdon knew or should have known that by combining the partnership and corporate insurance policies together that the parties needed to specify who was representing which entity.

Langdon was well aware of his employer's standing operational policy that the rejection of uninsured and underinsured motorist coverage was to be in writing. Langdon's attempt to do this on the face of the application is not sufficient. Langdon's writing does not indicate whether the corporation or the partnership was rejecting such coverage. Nor does it indicate that William realized he was rejecting uninsured and underinsured motorist coverage only for the corporation. Langdon should have been more specific on the face of the application or taken additional steps to clarify the coverage and the representation.

Even if William had the authority to act on behalf of the partnership and the corporation, it cannot be inferred that William intended to expressly reject uninsured and underinsured motorist coverage for the corporation. Since appellee has the burden of showing Wentz expressly rejected uninsured and underinsured motorist coverage, it cannot be established by inferring that William had the authority to reject such coverage for the corporation when he did not sign the application in his capacity as president of the corporation. Thus, by operation of law such coverage is provided and appellant's second assignment of error is well taken. The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SHAW, J., concurs.

BRYANT, J., concurs in judgment only.

---

does not disclose in what capacity Russell signed. Appellee does not contend that Russell's signature on the application bound the corporation in any manner.

THOMAS F. BRYANT, J., concurring in judgment only.

I concur in the judgment we enter because I conclude that the specificity with which an insured must reject uninsured motorist insurance coverage required by Ohio statutes and interpretive decisions has not been fulfilled in the execution of the contract here under consideration. Cf., *e.g., Estate of Cavanaugh v. Ohio Cas. Group of Ins.* (Aug. 1, 1990), Putnam App. No. 12–89–2, unreported, 1990 WL 113458. I do not agree that that portion of a witness's testimony is inadmissable as hearsay which merely relates the witness's observations identifying the person who signed a document in his presence and the time and place of signing, for such merely reports the witness's first-hand knowledge about relevant issues, and I do not believe that answer to the question of what insured the policy covers hinges on the rules of contract construction and of agent's authority as interpreted and applied in the rationale of the majority opinion. See Evid.R. 602 as to the former and as to the latter. Cf. *Ammerman v. Avis Rent A Car System* (1982), 7 Ohio App.3d 338, 341, 7 OBR 436, 438–439, 455 N.E.2d 1041, 1045. However, because I believe the judgment we enter affords substantial justice to the parties, I concur in that judgment only.