BRADY, ADMX., APPELLANT, *v.* UNIVERSAL
UNDERWRITERS INS. GROUP, APPELLEE.

(No. 73AP-45—Decided June 19, 1973.)

*Messrs. Federico, Myers, Giovanetti & Enz,* for appellant.

*Messrs. Williams, Murray, Deeg & Ketcham* and *Mr. James D. Booker,* of counsel, for appellee.

HOLMES, J. This matter is an appeal of a judgment of the Common Pleas Court of Franklin County sustaining the defendant's motion to dismiss the complaint. Such motion to dismiss was treated as a motion for summary judgment.

The action in the common pleas court was one for a declaratory judgment and was based upon a claim for recovery on a policy of insurance as issued by this defendant. Recovery was sought by the plaintiff-administratrix for in-

juries received by the deceased in an accident with an uninsured motorist.

The facts, in brief, are that one James E. Smith purchased a motorcycle from a dealer in London, Ohio. On the day of purchase, Mr. Smith signed an application for liability insurance coverage with the defendant insurance company, the appellee herein. At the bottom of such application form was found the following:

"In consideration of the issuance of this policy without an additional premium charge, I hereby request that Uninsured Motorists Coverage not be added to my liability policy."

Such statement was signed thereafter by James E. Smith upon a separate line from that which he had signed as an applicant for the insurance policy.

Mr. Smith permitted his motorcycle to be used by James Brady, a friend, and the latter was involved in a serious accident with an uninsured motorist. Subsequently, Mr. Brady died of the injuries received.

The administratrix of the deceased's estate brought this action against this defendant insurance company, claiming that coverage should be afforded in that the insurer had improperly offered uninsured motorists coverage to its insured and, in the alternative, that if such coverage in fact was offered that such was not offered in a way that the insured knew of the availability of such coverage, and that such waiver of coverage was not effective.

The trial court dismissed the complaint upon the basis that Smith could read and write and had signed such rejection, and therefore there had been an effective waiver of such uninsured motorists coverage. The court relied upon the case of *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, in rendering its decision.

The appellant sets forth the singular assignment of error to the effect that the trial court erred in granting the appellee's motion to dismiss.

The basic argument as propounded by the appellant in support of such assignment of error is that the defendant-appellee, in providing for uninsured motorists coverage in the manner as established within this matter, was

not in compliance with R. C. 3937.18, which is the section of law providing for uninsured motorists coverage.

R. C. 3937.18, in pertinent part, is as follows:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 4509.20 of the Revised Code, under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

The syllabus in *Abate, supra,* is as follows:

"1. R. C. 3937.18 requires automobile liability insurance policies issued in this state to contain an 'uninsured motorist' provision which protects the insured from losses occasioned through the fault of uninsured motorists, and such provision can be eliminated from such a policy of insurance only by the express rejection of that provision by the insured.

"2. Where a policy of automobile insurance contains an 'uninsured motorist' provision, and there has been no express rejection of that provision by the insured, the coverage afforded by the 'uninsured motorist' provision is provided to the insured by operation of law."

The facts of *Abate,* in brief, are that the insured, Mr. Joseph Abate, had purchased a policy of insurance in which

there was an uninsured motorists provision. There was no rejection clause to be found in such policy, and the findings of fact set forth that Mr. Abate "* * * was not given the opportunity to reject and has not in fact rejected uninsured motorist coverage as provided in O. R. C. Section 3937.-18."

The Supreme Court noted that there was some doubt as to whether Mr. Abate, in fact, paid an additional premium for such uninsured motorists coverage, but held it made no difference in such case. It stated, at page 165 of the opinion:

"* * * Under the mandatory provision of R. C. 3937.-18, uninsured motorist coverage was a part of that contract of insurance, the named insured not having expressly rejected such coverage. * * *"

The appellant argues that the trial court had improperly interpreted *Abate, supra,* and that the import of such case was to the effect that it must be shown that the insured realized that uninsured motorists coverage was available, and understood what he was rejecting.

Further, the plaintiff argues that the alleged rejection of the additional coverage by the insured, in light of the affidavit as filed by the insured, raised an issue to be decided by the trier of the fact, but only after a full presentation of the evidence on such issue.

The defendant insurance company submitted an affidavit to the court signed by Mr. James T. Martin, the motorcycle dealer who sold the cycle to Mr. Smith. The affidavit, in part, is as follows:

"Affiant further states that on May 2, 1969, a Mr. James E. Smith bought a 1968 Honda, serial number CB35-0100346 from him for $630.00 including tax and title. Mr. James E. Smith also wanted to finance this motorcycle so Affiant made the necessary arrangements with City Loan, Main Street, London, Ohio. In order for James E. Smith to finance said motorcycle it was required that he obtain motorcycle insurance, and accordingly affiant acquired an application for such insurance from the Laird Agency, London, Ohio. The particulars on the application were filled out and I then asked Mr. Smith if he wanted to purchase the Unin-

sured Motorists Coverage for an additional $7.00. Mr. Smith stated to me that he wanted the bare minimum insurance to get the loan financed, and he then signed the application and also signed the space provided to reject the Uninsured Motorists Coverage. He stated that he only wanted to pay the least amount possible for his insurance. The insurance was obtained, the loan was obtained, and the motorcycle was sold to James E. Smith.

"Affiant further states that he is particlularly familiar with this particular incident because James E. Smith's father worked as a motorcyle mechanic for Martin Supply at the time of sale, and Affiant further states that Mr. James E. Smith could both read and write."

Thereafter, an affidavit was filed by Mr. James Smith, portions of which affidavit are as follows:

"4. At no time did James T. Martin explain to affiant that Uninsured Motorist Coverage available as part of the coverage provided in the policy purchased by affiant nor did affiant know, at that time, anything about Uninsured Motorist Coverage.

"5. Affiant further states that the 'Xs' contained on the application provided to him by James T. Martin, a copy of said application attached hereto, were on the application when affiant first saw the application and he, affiant, was told by James T. L. Martin to sign the application at the 'X' if affiant wanted to secure the financing necessary to purchase the motorcycle."

In addition, there was filed in the trial court an affidavit of Mr. George Hildebrand, Chief of the Rating Division of the Ohio Insurance Department, which, in part, reads as follows:

"Affiant further states that so far as the Ohio Department of Insurance is concerned provision for the rejection of uninsured motorist coverage may properly be provided at the bottom of the insurance application if a separate line for signature is provided so that an insured will have to sign at one point on the insurance application to obtain the insurance, and so that he will also have to sign at another point on the application indicating his rejection of uninsured motorist coverage.

"Affiant further states that he has examined the application for insurance, and provision for rejection of uninsured motorist coverage, as used by Universal Underwriters Insurance Company in the State of Ohio, a copy of which is attached to plaintiff's Complaint as Exhibit B, and that such application and provision for rejection of uninsured motorist coverage satisfies the requirements of the Ohio Department of Insurance."

In *Abate, supra,* the policy of automobile insurance issued by the defendant, Pioneer Mutual Casualty Company, contained uninsured motorists coverage provisions, but the insured, Joseph Abate, had not been given an opportunity to reject, and had not rejected, the uninsured motorists coverage. The Supreme Court held that the Abates did have such coverage, even though they had not paid a premium for such coverage, because they had not expressly rejected coverage.

Thus, in *Abate,* it is our view that the court held that uninsured motorists coverage is provided by law unless the named insured overtly and expressly rejects such protection.

In the case before this court there is no question that the named insured actually signed the rejection form that was printed upon the insurance application.

There is no issue that the insured was absent his faculties, or that he could not read or write.

Further, there is no issue that the insured signed such rejection under duress, or conditions showing undue influence. Neither is there a claim of misrepresentation.

Conversely, the facts show that the insured was able to read and write, and that he had signed the rejection form which was located on a separate and distinct portion of the insurance application.

However, the plaintiff argues that his denial of knowledge of such coverage, and of knowledge that he had, in fact, rejected such coverage, raises issues of fact as to such.

It is the view of the majority herein that where the facts show that there has been an express rejection of uninsured motorists coverage, as within the facts of the in-

stant case, there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Such a holding we believe to be in full accord with the principles of law as set forth in *Abate, supra.*

The trial court was correct in granting the motion to dismiss, which, as stated previously, was treated as a motion for summary judgment.

The judgment of the Common Pleas Court of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., concurs.
WHITESIDE, J., dissents.

WHITESIDE, J., dissenting. In my view, this case requires a determination of factual issues; accordingly, I dissent.

The pleadings and affidavit do not unequivocally show that the insured rejected uninsured motorist coverage within the contemplation of R. C. 3937.18.

That section requires that every automobile liability policy provide uninsured motorist coverage either in the policy itself or supplemental thereto. While such coverage may be provided by language in the body of the policy or in an attached endorsement, such coverage must be included as part of the basic coverage afforded by the policy. It may be deleted from the policy only if the insured expressly rejects such coverage.

Here, uninsured motorist coverage was offered only as additional coverage, not as part of the basic coverage. The contended "rejection" signed by the insured states that uninsured motorist coverage is requested "not to be added" to the policy in consideration of issuance "without an additional premium charge." The affidavit of James T. L. Martin states: "I then asked Mr. Smith if he wanted to purchase the Uninsured Motorists Coverage for an additional $7.00."

The insured, on the other hand, in his affidavit stated: "At no time did James T. Martin explain to affiant that

Uninsured Motorist Coverage available as part of the coverage provided in the policy purchased by affiant nor did affiant know, at that time, anything about Uninsured Motorist Coverage."

In *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, Justice Corrigan states, at page 163:

"Appellant's contention that this section is a mere regulatory statute requiring appellant, as an insurance company, to offer uninsured motorist coverage with automobile liability policies is clearly not borne out by the terminology of the statute.

"The language of the statute makes the uninsured motorist coverage imperative in that it requires the insurer, as a condition to the issuance of a policy, to provide that coverage in the policy. However, the statute does not require the insured to accept that coverage. The statute does not employ the word 'offer,' but it does provide 'that the named insured shall have the right to reject such coverage." Thus, the only way in which the coverage can be eliminated from the insurance contract is by the overt refusal by the insured to accept it. * * *"

Here, rather than an "overt refusal by the insured to accept" uninsured motorist coverage, there was only a request that such coverage not be added to the policy for an additional premium. Under circumstances where the insured fully understands the statutory requirements, such a request that such coverage not be added might constitute an "overt refusal by the insured to accept" such coverage. This, however, requires a factual determination which cannot be made upon summary judgment where the facts are disputed.

Later, in the *Abate* opinion, Justice Corrigan states, at page 165: "R. C. 3937.18 makes mandatory the offering of uninsured motorist coverage by insurance companies licensed in the state of Ohio." However, such "offering" must be a part of the basic coverage of the policy, not merely an "offering" available as additional coverage for an additional premium.