OPINION
Defendant-Appellant, Allstate Insurance Company ("Allstate"), appeals the decision of the Crawford County Court of Common Pleas granting summary judgment in favor of William and Carolyn Coldwell ("Appellees"). For the following reasons, we reverse the judgment of the court below.
The pertinent facts of the case are as follows. Since 1969, William Coldwell and his wife, Carolyn Coldwell, purchased automobile insurance from Allstate Insurance Company. In 1983, the Appellees purchased a personal umbrella policy which did not provide uninsured motorists ("UM") coverage. The policy became effective March 2, 1983.
On January 15, 1987, Allstate issued personal umbrella policy declarations for the policy period beginning March 2, 1987. For the first time, Allstate provided UM coverage for an additional premium. Allstate later issued personal umbrella policy declarations for the policy period beginning March 2, 1988, which also provided UM coverage for an additional premium.
On March 18, 1988, Mrs. Coldwell signed and dated an uninsured motorists acceptance/rejection form.[1] The form reveals that Mrs. Coldwell placed a check mark in a box stating that "I do not want Coverage SS included in my policy." The acceptance/rejection form identifies "Coverage SS" as "Uninsured Motorists Insurance." Allstate then issued amended personal umbrella policy declarations to the Appellees. The declarations form reveals that the UM coverage had been rejected. Since March 22, 1988, the personal umbrella policy declarations have repeatedly notified the Appellees that the UM coverage had been rejected, and that their policy no longer included a premium for that type of coverage.
In 1995 the Appellees were involved in a major traffic accident. Allegedly at fault was an uninsured tortfeasor. The Appellees eventually filed a complaint for a declaratory judgment on the issue of UM coverage with Allstate. Both parties filed motions for summary judgment. On December 18, 1998, the trial court granted the Appellees' motion for summary judgment on the issue of UM coverage.
It is from this judgment that Allstate now appeals, having set forth the following four assignments of error.
ASSIGNMENT OF ERROR NO. I
 The trial court erred when it held that Allstate Insurance Company was required to and had not made in writing an offer of equivalent UM/UIM coverage.
ASSIGNMENT OF ERROR NO. II
 The trial court erred in finding that there was not an express cancellation of UM/UIM coverage.
ASSIGNMENT OF ERROR NO. III
 The trial court erred in finding that Carolyn E. Coldwell was not authorized to cancel UM/UIM coverage on the Personal Umbrella Policy.
 In the alternative, the trial court erred by not finding that a genuine issue of material fact exists concerning whether Carolyn E. Coldwell was authorized to cancel UM/UIM coverage on the Personal Umbrella Policy.
ASSIGNMENTOF ERROR NO. IV
 The trial court erred in holding that Allstate Insurance Company's policy declarations form is ambiguous.
For purposes of clarity and brevity, Appellant's four assignments of error will be addressed simultaneously.
Standard of Review for Summary Judgment
In considering an appeal from the granting of a summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720. Accordingly, we apply the same standard for summary judgment as did the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 8.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679,686-87. To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56(C).
Having set forth the proper standard of review, we now turn to the merits of Appellant's four assignments of error.
According to R.C. 3937.18, automobile insurance policies in Ohio are required to contain provisions for UM coverage unless the coverage is rejected by the named insured. R.C. 3937.18 provides in pertinent part as follows:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
 (B) Coverages offered under division (A) of this section shall be written for the same limits of liability.
 (C) The named insured may only reject or accept both coverages offered under division (A) of this section.
Equivalent coverage under this section is provided as a matter of law unless the insured expressly rejects such coverage. Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161; Owens v. State Farm Mut. Auto. Ins. Co. (1996), Marion App. No. 9-96-10, unreported; Brady v. Universal Underwriters (1973), 37 Ohio App.2d 107.
We will first address Appellant's contention that the trial court erred in finding that no genuine issue of material fact remains to be litigated upon the issue of whether Mrs. Coldwell was authorized to cancel the UM coverage on the personal umbrella policy. For the following reasons, we agree.
Pursuant to R.C. 3937.18, only the named insured may accept or reject UM coverage. In order to be a named insured under R.C.3937.18, a person must be listed as such on the declarations page of the insurance policy. Stacy v. Nationwide Mut. Ins. Co. (Feb. 27, 1998), Erie App. No. E-96-053, unreported; Hillyer v. State Farm Mut. Auto Ins. Co. (Jan. 14, 1999), Cuyahoga App. No. 75073, unreported.
In the case before us, Mr. Coldwell is the only named insured listed on the declarations page of the insurance policy. Despite this, in Owens v. State Farm Mut. Auto. Ins. Co. (June 28, 1996), Marion App. No. 9-96-10, unreported, this Court addressed a similar issue to the one presented herein—whether a spouse had the authority to act for the named insured under an automobile insurance policy. In Owens, supra, we held that unless an agency relationship existed between the husband and wife, whereby the insured granted the spouse authority to act for him, no valid rejection of UM coverage was obtained by the insurance company. See, also, Society Natl. Bank v. Kienzle (1983), 11 Ohio App.3d 178,182.
Thus, we must now determine whether a genuine issue of material fact remains to be litigated upon the issue of whether an agency relationship existed between the couple as husband and wife.
The facts surrounding the signing of the acceptance/rejection form by Mrs. Coldwell are as follows. Mr. Coldwell testified in his deposition that both he and his wife discussed their financial matters together. Mr. Coldwell also testified that prior to making any decision regarding insurance coverage, he and his wife would discuss the matter together. In her deposition, Mrs. Coldwell also testified that she and her husband would discuss their financial matters together and that, with regard to the Allstate insurance policy, she would never make a change without consulting her husband beforehand. Given the foregoing, it is quite apparent that the facts before us do reveal that a genuine issue of material fact remains to be litigated upon the issue of whether Mr. Coldwell clothed his wife with apparent authority to act upon his behalf.
Furthermore, we find that a genuine issue of material fact remains to be litigated upon the issue of whether an appearance of authority was created to justify an agency by estoppel. In order to create an agency by estoppel, the principal must hold the agent out to the public as possessing that authority that the agent is attempting to exercise, or the principal must knowingly permit the agent to act as though such authority exits. Blackwell v. Internatl. Union, U.A.W. (1983), 9 Ohio App.3d 179, 181. Mr. Coldwell's testimony furthers the finding of his ability to create an agency by estoppel. For the foregoing reasons, Appellant's assignment of error is well-taken and is sustained.
Appellant next maintains that the trial court erred in holding that no genuine issue of material fact remains to be litigated upon the issue of whether there was an express cancellation of UM coverage. For the following reasons, we agree.
We first note that the issue of whether the insured rejected UM coverage is an issue of fact. Abate, 18 Ohio App.2d at 75. The signing of a provision requesting that UM coverage not be provided in a policy has been held a valid rejection, absent evidence of duress, fraud, or misunderstanding in obtaining the signatures. Owens v. Farm Mut. Auto Ins. Co. (1996), Marion App. No. 9-96-10, unreported; Brady, 37 Ohio App.2d at 112. However, the burden of demonstrating an express rejection of UM coverage is on the insurance company since the insurer faces defeat in the absence of proof. Poots v. Motorist Ins. Co. (1986), 38 Ohio App.3d 48,49, citing Ady v. West Am. Ins. Co. (1982), 69 Ohio St.2d 593.
In the case before us, the record reveals that on March 18, 1988, Mrs. Coldwell marked in the appropriate box of the uninsured motorists acceptance/rejection form that "I do not want Coverage SS included in my policy." The acceptance/rejection form identifies "Coverage SS" as "Uninsured Motorists Insurance." The evidence also shows that Mrs. Coldwell signed and dated the form. Further, there is before us no evidence of duress, fraud, or misunderstanding in obtaining the requisite signature.
For the foregoing reasons, we find that a genuine issue of material fact remains to be litigated upon the issue of whether the insured expressly rejected the UM coverage. Thus, we find the trial court erred in granting summary judgment upon this issue in favor of the Appellees. Accordingly, Appellant's assignment of error is well-taken and is sustained.
Appellant next maintains that the trial court erred in granting summary judgment in favor the Appellees upon the issue of whether Allstate's declarations form is ambiguous. For the following reasons, we agree.
We first note that the interpretation of an insurance contract involves a question of law. Leber v. Smith (1994),70 Ohio St.3d 548, 553. When possible, words and phrases of an insurance policy should be given their natural and commonly accepted meaning so that "a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." Gomolka v. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 168; King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208. When the language of an insurance contract is reasonably susceptible to more than one interpretation, it is ambiguous and will be construed in favor of the insured and against the insurer. Gomolka, supra, at syllabus; King, supra, at syllabus.
In the present case, the Allstate policy declarations form, amended March 2, 1988, expressly sets forth that the UM coverage had been rejected and that the change in the policy coverage had caused a premium decrease in the amount of $57.00 for the period March 2, 1988 to March 2, 1989. However, the trial court held that the additional language located at the bottom of the declarations page rendered the form ambiguous and, thus, any ambiguity must be resolved in favor of the insured. Specifically, the following appears at the bottom of the form:
SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS
* * *
U10465-1 UNINSURED MOTORISTS INSURANCE ENDORSEMENT
Although we agree with the trial court's general proposition that ambiguities in an insurance policy are resolved in favor of the insured, we cannot conclude that the declarations form at issue in the present case is ambiguous or confusing to the average insured. The declarations form affirmatively establishes that the UM coverage had been rejected and that this coverage was no longer available to the insured. We find that the plain and ordinary meaning of the declarations form firmly establishes that the UM coverage had been rejected in this case.
Thus, we find that the trial court erred in granting summary judgment in favor of the Appellees upon this issue. For the foregoing reasons, Appellant's assignment of error is well-taken and is sustained.
As our final consideration, Appellant maintains that the trial court erred in finding that no genuine issue of material fact remains to be litigated upon the issue of whether Allstate had made in writing a subsequent offer of equivalent UM coverage. For the following reasons, we agree.
As we previously stated, it is well-settled that automobile insurance policies in Ohio are required to contain provisions for UM coverage unless the coverage is rejected by the insured. See R.C. 3937.18. Further, without the express rejection of the insured, an insured is afforded UM coverage in amounts equal to liability limits by operation of law. Abate, 22 Ohio St.2d at paragraph one of the syllabus.
R.C. 3937.18(C), however, provides in pertinent part as follows:
 Unless the named insured requests such coverages in writing, such coverages need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverages in connection with a policy previously issued to him by the same insurer.
Again, in order to be a named insured under R.C. 3937.18, the person must be listed as such on the declarations page of the insurance policy. Stacy, supra; Hillyer, supra. Having determined that Mr. Coldwell is the only named insured listed on the declarations page of the automobile insurance policy, generally he alone possesses the authority to reject or accept the UM coverage. However, we previously held in Appellant's third assignment of error that upon establishing that a spouse has the authority to act upon behalf of the named insured, full effect shall be given to that spouse's choice of whether to accept or reject such coverage.[2]
In the case before us, the record reveals that that the Appellees were offered UM coverage in January of 1987 and January of 1988. On March 18, 1988, Mrs. Coldwell signed the uninsured motorists rejection form stating that "I do not want Coverage SS included in my policy." The rejection form identifies "Coverage SS" as "Uninsured Motorists Insurance."
If established in the court below that Mr. Coldwell, the named insured, granted Mrs. Coldwell the authority to act upon his behalf, then Appellant was not required upon each renewal of the insurance policy to offer UM coverage to the Appellees. Thus, the outcome of Appellant's first assignment of error is contingent upon whether Mrs. Coldwell had the authority to act for her husband. As such, Appellant's assignment of error is well-taken to that extent and is sustained.
For the foregoing reasons, we reverse the judgment of the court below and remand this cause for further proceedings consistent with this opinion.
Judgment reversed.
BRYANT, P.J., and WALTERS, J., concur.
[1] We note that Allstate's uninsured motorists ("UM") acceptance/rejection form applies to both uninsured motorists coverage and underinsured motorists ("UIM") coverage.
[2] The establishment of an appearance of authority to justify an agency by estoppel will also lead to this result.